# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 24-2972

UNITED STATES OF AMERICA

v.

LAMAR MCCULLOUGH,
Appellant

_____

On Appeal from the U.S. District Court, D.N.J.
Judge Katharine S. Hayden, No. 2:22-cr-00576-001

Before: PORTER, MONTGOMERY-REEVES, AND BOVE, *Circuit Judges*
Argued: June 2, 2026; Filed: Aug. 4, 2026

NONPRECEDENTIAL OPINION[**]

BOVE, *Circuit Judge*.  The government told jurors that the trial in this case was about a man who "shot someone in close range in the middle of the street."  A665-66.  Not quite.  In truth, Defendant Lamar McCullough was charged and convicted of illegally possessing ammunition as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Two evidentiary errors arose from the government's efforts to make this a murder trial without a murder charge.

First, under Rule 403, the government should not have been permitted to offer photographs of blood on the sidewalk.  The photographs were deeply prejudicial and had

---

[*] This disposition is not an opinion of the full Court and, under 3d Cir. I.O.P. 5.7, is not binding precedent.  The Clerk of the Court is directed to correct in the ECF system the spelling of Defendant's last name, which is McCullough as reflected in the caption above.

almost nothing to do with the ammunition evidence that was central to the crime the government chose to prosecute.

Second, the government violated Rule 701 by offering a lay opinion from a detective regarding Defendant's identity in a video of the shooting. This is the second time in less than three months we have identified a Rule 701 error by this office relating to improper use of law-enforcement testimony. *See United States v. Evans*, 175 F.4th 443, 453 (3d Cir. 2026).[1] As in *Evans*, however, we are duty-bound by precedent to hold that the evidentiary errors were harmless in light of the additional evidence presented at the trial.

Defendant's other arguments, including his challenge to the District Court's application of U.S.S.G. § 2K2.1, do not merit appellate relief. Accordingly, we will affirm.

## I.

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal. The shooting occurred in Newark, New Jersey, on March 5, 2021. Police found four 9-millimeter casings and a projectile where it happened. Relying on consent and in some instances search warrants, the detective collected surveillance video from the day of the shooting and narrowed in on a man wearing a green hat and a black jacket.

About a week after the shooting, the detective observed two men he believed were suspects while watching a live camera feed recording not far from the crime scene. Acting at the detective's direction, two officers approached the men and asked about their

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, alterations, and subsequent history. Citations to "Rules" are to the Federal Rules of Evidence.

identities. Defendant was one of the men who identified himself, and he was wearing a green hat. The detective believed that Defendant was the shooter based on what he saw from the live feed and had seen on various surveillance videos.

On April 1, 2021, police arrested Defendant pursuant to state-law weapons charges, seized his phone, and searched his car pursuant to a warrant. Defendant's phone contained messages from the night before the shooting that included what appeared to be references to firearms and a photograph of two 9-millimeter pistols. Police also found a green hat and a black jacket in Defendant's vehicle.

Following the local arrest, the government charged Defendant in a federal case with a violation of § 922(g)(1). A jury convicted Defendant on that charge. At sentencing, the District Court imposed a within-Guidelines term of imprisonment of 120 months, which was capped by the statutory maximum. Defendant timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review evidentiary rulings and procedural-error sentencing claims for abuse of discretion. *Evans*, 175 F.4th at 450; *United States v. Newkirk*, 174 F.4th 336, 342 (3d Cir. 2026).

## III.

We have identified two evidentiary errors during the trial. The government's three photographs of blood, and little else, should have been excluded pursuant to Rule 403. The detective's lay opinion regarding Defendant's identity on a video of the shooting was also

3

inadmissible under Rule 701.  Our standard of review compels us to conclude that these errors were harmless in light of the entire trial record.

## A.

The District Court violated Rule 403 by admitting three crime-scene photographs that showed blood but not ammunition.  *See* SA30 (GX 206-27), SA31 (GX 206-28), SA32 (GX 206-30).  In so holding, we are mindful that "[d]istrict courts deserve broad deference in applying Rule 403."  *United States v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021).  Moreover, "[n]ot all prejudice is unfair prejudice, and Rule 403 bars only the latter.  Evidence that reveals a defendant's legal guilt can be highly prejudicial, but that alone does not make it unfairly so."  *United States v. Long*, 92 F.4th 481, 488 (3d Cir. 2024).  On the other hand, Rule 403 is not without limits.  Here, the government pushed the Rule past its breaking point.

These pictures were graphic depictions of spilled blood with—at best—de minimis probative value.  GX 206-27 shows a pool of blood on the sidewalk surrounded by smaller blood drops.  The detective testified that the blood was located "several houses down" from the crime scene.  A718.  That is it.  GX 206-28 shows more blood on the street situated about four sidewalk squares away from the blood in GX 206-27.  The government hardly paused the mid-trial gore montage to ask the detective about the relevance of GX 206-28.  From an unfair-prejudice perspective, GX 206-30 was the culmination of this sideshow.  The photograph shows significant pools of blood dripping down the steps of a house on the block where the shooting occurred.  For this piece of evidence, the government used a

4

leading question to confirm that the blood was "contiguous from other blood spots and trails" that the detective had observed. A719. Nothing more.

On appeal, the government has cited cases that are far afield from what happened at Defendant's trial. In *United States v. Flenoid*, the "bloody fingerprints" were directly relevant to possession under § 922(g)(1). 415 F.3d 974, 976-77 (8th Cir. 2005). Not so here. The trial judge in *Flenoid* also provided a limiting instruction. *Id.* at 977. The government also cites *Government of Virgin Islands v. Albert*, 241 F.3d 344 (3d Cir. 2001). The obvious and critical distinguishing feature of *Albert* is the first-degree felony murder charge the defendant in that case faced.

During the prosecution, the District Court and the government suggested that the pictures were admissible to explain to the jurors how the investigation proceeded. Commendable as the detective's efforts appear to have been, however, the government's questionable fixation with narrating the investigative sequence during the trial did not change the Rules of Evidence. The pictures were the type of proof that "inhibits neutral application of principles of law to the facts as found." *United States v. Savage*, 85 F.4th 102, 130 (3d Cir. 2023).

The government also claimed at trial that it had been "incredibly circumspect" because there was "not a single photograph that contains both the bullets and the blood." A703. In reality, that was an apt description of the problem. The blood was highly prejudicial and extremely attenuated from the evidence at the heart of the charge at issue. Accordingly, we hold that the District Court erred under Rule 403 by admitting GX 206-27, GX 206-28, and GX 206-30.

**B.**

The detective's lay opinion that Defendant was the shooter on a video in evidence violated Rule 701. This is not a close call, and we question the government's decision to defend it on appeal.

The detective collected approximately 45 surveillance videos that he believed were relevant to the investigation of the shooting. Prior to trial, the government told the District Court and defense counsel that "the Government does not intend to have [the detective] look at the video of the shooting *alone* and say that shooter right there is the defendant." A321 (emphasis added). While difficult to discern from the cold record, it appears that the government placed more evidence on the word "alone" than our case law could possibly bear. Because, at trial, the government asked the detective to narrate all of the videos and then elicited his opinion regarding Defendant's identity at the end of that testimony:

> Q. After you reviewed all of the surveillance footage, Detective, did you form an opinion as to the identity of the shooter?
>
> A. Yes.
>
> Q. And what was that opinion?
>
> A. So I – we identified him as – I identified him as Lamar McC[u]llough as the shooter in this investigation.

A860.

Two requirements of Rule 701 are relevant to this issue. Rule 701(a) establishes a "perception requirement": the witness must have first-hand knowledge of the factual predicates for the opinion. *Evans*, 175 F.4th at 451. Rule 701(b) requires that the proffered lay opinion be "helpful" to the jury. *Id.* "To be helpful, the witness must have a reasonable

6

basis grounded either in *experience or specialized knowledge* for arriving at the opinion expressed." *Id.* There is some overlap in these requirements. The detective's opinion failed both.

With respect to perception, there is no suggestion in the record that the detective had any direct interactions with Defendant before charges were filed. Instead, the government's defense of the opinion turns on the fact that the detective watched a lot of videos of Defendant a lot of times, including a live video in one instance. The logic is fatally circular. A lay witness cannot form an admissible opinion regarding video identification by watching other videos. Nor, contrary to the government's arguments on appeal, have we ever construed Rule 701(b)'s helpfulness requirement as broadly as it was stretched at this trial. *Compare United States v. Fulton*, 837 F.3d 281, 299 (3d Cir. 2016) (finding error with lay opinion from witnesses who lacked "sufficient familiarity with the appearances" and described no "familiarity" with the defendant or associate), *with United States v. Valentin*, 118 F.4th 579, 585 (3d Cir. 2024) (finding no error with lay opinion from witness "who had seen [the defendant] more than fifty times in her life"). Jurors are not helped, from an evidentiary standpoint, by being directed to a conclusion they could reach on the same basis by using their own eyes.

In a supplemental submission, the government asserted that the "sheer volume" of video evidence supported the admissibility of the detective's opinion. That argument is completely wrong-headed. Helpfulness under Rule 701(b) does not mean helpful in the sense that the testimony might save jurors time or energy. There are no shortcuts. It was the government's job to present admissible evidence and make arguments regarding the

7

inferences they wanted the jurors to draw from that evidence. The District Court erred by permitting the government to lean on the imprimatur of law enforcement to present a lay opinion on an identification issue that the jurors were well-equipped to resolve themselves.

**C.**

Despite these problems, we must conclude "that it is highly probable that the error[s] did not contribute to the jury's judgment of conviction." *Evans*, 175 F.4th at 453.

The circumstantial evidence supporting the § 922 charge was strong. During the night before the shooting, Defendant participated in two exchanges of text messages that suggested he was trying to obtain a gun. The messages included two photographs of 9-millimeter guns, which matched the caliber of the ammunition at issue in the case. Location data from Defendant's cellphone placed him in the vicinity of the shooting around the time it occurred. Following the shooting, Defendant tried to call the man who brought the shooting victim to the hospital three times. Defendant also sent a text message referring to a gun. Law enforcement seized the green hat and black jacket worn by the shooter from Defendant's vehicle, and there was a picture of Defendant wearing the hat on his cellphone.

Our harmless-error conclusion is buttressed by several additional considerations. Prior to the inadmissible lay opinion, after the detective inadvertently referred to an individual in a different video as "the defendant," the District Court instructed the jurors that the comment was "error" and that it was the jurors' "job to decide whether or not Mr. McCullough is in the video." A785-86. This limiting instruction mitigated the damage of the subsequent opinion.

8

When the jurors started to deliberate, they were provided with all of the videos and a laptop during so that they could review the evidence and reach their own conclusions. *See Fulton*, 837 F.3d at 300. The District Court's final instructions encouraged the jury to do just that. The court discussed expert opinions separately, characterized the detective's challenged testimony as a "personal opinion," and told the jurors that his opinion "should receive whatever weight you think appropriate, given all the other evidence in the case." A1344. The court also instructed the jury that law enforcement testimony was not entitled to more consideration or weight than other testimony.

For all of these reasons, we hold that the trial record meets the harmless-error standard established in *Evans* and our other precedents.

**IV.**

Defendant argues that his sentence was infected by procedural error because the District Court misapplied the Guidelines. He is wrong.

The default Guideline applicable to Defendant's § 922(g)(1) offense was U.S.S.G. § 2K2.1. At sentencing, the District Court properly applied a series of cross references and instructions in the Guidelines Manual to move from U.S.S.G. § 2K2.1(c)(1)(A) to § 2X1.1(a) to § 2A2.1(a), which covers assault with intent to commit murder. The District Court calculated a base offense level of 27, pursuant to U.S.S.G. § 2A2.1(a)(2), by finding that the underlying offense during the § 922(g)(1) violation was attempted murder. The District Court then applied a two-level enhancement, pursuant to U.S.S.G. § 2A2.1(b)(1)(B), by finding that the victim sustained "serious bodily injury." At offense level 29 and Criminal History Category VI, the Guidelines recommended a range of 151-

9

188 months' imprisonment. The District Court recognized that the statutory maximum term of imprisonment for the § 922(g)(1) crime capped the Guidelines range at 120 months, and the court imposed that sentence. *See* U.S.S.G. § 5G1.1(a).

Defendant argues that the District Court should have applied U.S.S.G. § 2A2.2, which covers aggravated assault and provides for a lower base offense level. We agree with the District Court that "it was clear" from the video that Defendant "was shooting directly and with intent to harm because it's a gun and it was being shot and it was being shot more than once." A1473. In addition to the video of the shooting, the communications summarized above in Part III.C, as well as the ammunition evidence suggesting that Defendant fired at least four shots at the victim from close range, were sufficient to prove by a preponderance that Defendant attempted to murder the victim.

Defendant argues that jurisdictional limitations of the federal murder statute were not satisfied. We need not address that argument because the pertinent provisions of the Guidelines are not limited to federal crimes. Murder under New Jersey law does not contain the same jurisdictional requirements. *See* N.J. Stat. Ann. § 2C:11-3(a); *see also id.* 2C:5-1 (defining attempt). Nor is there a specific-intent requirement under New Jersey law. *See, e.g.*, *State v. Gilliam*, 541 A.2d 309, 311 (N.J. App. Div. 1988). Therefore, we reject Defendant's challenges to the calculation of the base offense level pursuant to U.S.S.G. § 2A2.1(a)(2).

Finally, the District Court did not err in applying a two-level enhancement for serious bodily injury. *See* U.S.S.G. § 2A2.1(b)(1)(B). This readily follows from the photograph of the intubated victim at the hospital and other evidence from the crime scene,

which was inadmissible at trial but fair game for the District Court to rely upon at sentencing.

## V.

Federal law provides ample room for the government to protect the public and pursue other valid criminal justice objectives. In this case, there was an appropriate time and place for the government to make a fair argument that Defendant tried to murder the victim. It was at sentencing, and only after the jury convicted Defendant based on admissible evidence of the federal crime that brought the parties to the District Court. Notwithstanding the evidentiary errors at the trial, we are bound by our harmless-error precedents to look past the government's missteps. We have considered Defendant's remaining arguments and find them to be without merit under the law of this Circuit. Accordingly, we will affirm.

*Counsel for Appellant*
Michael T. Ashley [Argued]
Ashley Law

*Counsel for Appellee*
Mark E. Coyne
Sabrina G. Comizzoli [Argued]
Office of United States Attorney